IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| V. | ) | Cr. No. 4:12CR00001 |
| | ) | |
| RODNEY LAMAR HAIRSTON | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM OF THE DEFENDANT, RODNEY LAMAR HAIRSTON

The Defendant, Rodney Lamar Hairston, was nineteen years old, with no criminal convictions, when he made a series of decisions that led him to where he is today, convicted of conspiracies to distribute marijuana and to use of a firearm in the death of Akoreon Murphy. Although Rodney was not a shooter or even at the scene of the shooting, he was the individual that thought of the idea of robbing Von Hairston in order to get himself out of drug debt. Moreover, while Rodney sent a text to his co-defendant trying to stop the robbery, that text came too late. To his credit, Rodney began cooperating with authorities days after the shooting, and testified before the grand jury without the benefit of counsel, cooperation which we believe will result in a motion for substantial assistance.

This Sentencing Memorandum is filed to assist the Court in determining what length of sentence for Rodney Hairston is

1

sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. Section 3553(a).

## I. Sentencing Standards

As this Court is well aware, the United States Supreme Court has made clear that a sentencing court may not presume that a sentence within the applicable Guidelines range is reasonable. *Nelson v. United States*, 129 S.Ct. 890, 892 (2009); *Rita v. United States*, 127 S.Ct. 2456 (2007), *Kimbrough v. United States*, 128 S.Ct. 559(2007); *Gall v. United States*, 128 S.Ct. 586 (2007).

Rather, the Guidelines, "formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough*, 128 S.Ct. at 564. Those several factors are primarily contained in 18 U.S.C. Section 3553. Moreover, "[Section 3553(a)], contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing." *Kimbrough*, at 570.

In *Gall*, the Court instructed the sentencing courts to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, at 128 S.Ct. at 596.

However, because the "Guidelines are not the only consideration", the judge, "after giving both parties an

opportunity to argue for whatever sentence they deem appropriate,"
"should then consider all of the Section 3553(a) factors to
determine whether they support the appropriate sentence in light
of the Section 3553(a) purposes and factors, and must consider
arguments that the Guidelines should not apply on general policy
grounds, case-specific grounds (including guideline-sanctioned
departures), or "regardless." *Rita*, 127 S.Ct. at 2463, 2465,
2467-68. The judge "must make an individualized assessment based
on the facts presented," and "must adequately explain the chosen
sentence to allow all meaningful appellate review and to promote
the perception of fair sentencing." *Gall*, 128 S.Ct. at 597.

## II Sentencing Guidelines Calculation

In the instant case, the base offense level is 43. *See*
U.S.S.G. Section 2A1.1. The Defendant submits that the only
adjustment to be applied is a three point reduction for acceptance
of responsibility. Consequently, the total offense level should
be 40 with a criminal history category of I, resulting in a
sentencing range of 292-365 months.

The presentence report applies a multiple count
adjustment. However, Defendant maintains that under U.S.S.G.
Sections 3D1.1 through 3D1.5, this adjustment is not appropriate
in this case.

3

Section 3D1.1 provides that when a defendant has been convicted of more than one count, the court shall: (1) group the counts resulting in conviction into distinct groups of closely related counts by applying the rules specified in Section 3D1.2; (2) determine the offense level applicable to each group by applying the rules specified in Section 3D1.3; and, (3) determine the combined offense level applicable to all groups taken together by applying the rules specified in Section 3D1.4.

In this case both counts of conviction should be grouped together as "closely related counts". Section 3D1.2 states that all counts involving substantially the same harm shall be grouped together into a single group. Furthermore, it directs that counts involve substantially the same harm within the meaning of this rule: (a) when counts involve the same victim and the same act or transaction; (b) when counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan; or, (c) when one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline application of another of the counts.

In this case the two counts of conviction are grouped

under sub-sections (a) and (b), as they involve the same act or transaction and they are connected by a common criminal objective and constitute a common scheme or plan. Count One charges a conspiracy to distribute marijuana in violation of 21 U.S.C. Section 841(a)(1)(D) and 846, and Count Three charges that the defendants possessed a firearm in furtherance of a drug trafficking crime and caused the death of a person, in violation of 18 U.S.C. Sections 924(c) and 924(j). The marijuana conspiracy alleged in Count One is the drug trafficking crime that forms the basis for Count Three. Therefore, the offenses clearly involve the same act or transaction and they are connected by a common criminal objective and constitute a common scheme or plan.

Moreover, the offenses involve the same victim, Akoreon Murphy. Application note 2 explains the meaning of the term "victim" as used in Section 3D1.2. That note states that "the term 'victim' is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim". In this, case the identifiable victim of both counts is Mr. Murphy. He was most directly and seriously affected by the offenses.

Ordinarily the "victim" of a drug crime is "society at large." *See,* Application note 2, U.S.S.G. Section 3D1.2. However, in this case, the pre-sentence report uses the cross reference in the drug guideline, Section 2D1.1, and applies the first degree murder guideline in Section 2A1.1, to the drug offense because, a "victim was killed." That victim is Mr. Murphy.

This grouping is appropriate because it prevents "double-counting" of offense behavior in closely related counts. The Defendant's offense level for Count One is greatly enhanced by the fact that Mr. Murphy was killed in furtherance of the marijuana distribution conspiracy. These homicide and marijuana conspiracies also form the basis for the elements of Count Three. Accordingly, to have a multiple count adjustment for these closely related counts involving the same victim would not be consistent with the multiple count rules.

Because Counts One and Three are grouped pursuant to Section 3D1.2(a) and (b), there is no multiple count adjustment and the adjusted offense level applicable to the Defendant is 43 and the total offense level is 40.

## A.   Objections to the Pre-sentence Report

The presentence report has rejected these arguments

and addressed this issue with two responses.

### 1. Exclusion of U.S.S.G. Section 2A1.1

First, it states that U.S.S.G. Section 2A1.1 is specifically excluded from grouping under U.S.S.G. Section 3D1.2(a) and (b). However, that exclusion applies to subsection 3D1.2(d), not subsections 3D1.2(a) and (b), and the Guideline specifically states, "exclusion of an offense from grouping under this subsection [3D1.2(d)] does not necessarily preclude grouping under another subsection." Thus, the exclusions contained in subsection 3D1.2(d) do not prevent grouping under subsections 3D1.2(a) and (b), the subsections applicable to this case.

### 2. Whether 18 U.S.C. Section 924(j) Sentence Must Run Consecutive to Other Sentences

Next, the presentence report states that application note 1 precludes grouping in this case because, "Count Three is a violation of 18 U.S.C. Section 924(c), which requires it to be served consecutively to Count One," and offenses requiring a consecutive sentence are excluded from the grouping rules.

However, Count Three actually charges a violation of 18 U.S.C. Sections 924(c) *and* 924(j), and 924(j) does not direct that a sentence under that statute must run consecutively to any

7

other sentence. Moreover, a review of relevant legislative history and case law indicates that under 18 U.S.C. Section 924(j), the Court has the discretion to run a Section 924(j) sentence consecutive to another sentence.

### (a) The Legislative History of 18 U.S.C. 924(c) and 924(j) Indicates that 924(j) is a Separate Offense from a Violation of 924(c) and not Subject to a Mandatory Consecutive Sentencing Scheme

A careful review of the statutory history of 18 U.S.C. §924(c) and §924(j) demonstrates that 924(j) is a separate offense from 924(c), and does not include the requirement that a sentence must run consecutively to any other term of imprisonment. Therefore, the District Court is empowered to order that a term of imprisonment under 924(j) run concurrently to another sentence.

18 U.S.C. §924 was enacted in 1968 and has been amended on twelve occasions. In 1971, 924(c) was amended to provide for a mandatory minimum one-year term of imprisonment, and a ten-year maximum term of imprisonment for first time offenders. The 1971 amendment also provided for a two to twenty-five year term of imprisonment for a second or subsequent conviction. The 1971

amendment also prevented district courts from suspending the sentence or issuing a probationary sentence. *See* Act of Jan. 2, 1971, P.L. 91-644, Title II, § 13, 84 Stat. 1890.

In 1984, Congress amended 924(c) to include a provision stating that: "nor shall the term of imprisonment imposed under this subsection run concurrently with any term of imprisonment imposed for the commission of such felony." *See* Act of Oct. 12, 1984, P.L. 98-473, Title II, Ch II, § 223(a), Ch X, Part D, § 1005, 98 Stat. 2038, 2138. Two years later, Congress amended 924(c) again, this time to include a twenty-year mandatory period of imprisonment for the use of a machinegun or any firearm equipped with a silencer. *See* Act of May 19, 1986, P.L. 99-308, § 104(a), 100 Stat. 456; Oct. 27, 1986, P.L. 99-570, Title I, Subtitle I, § 1402, 100 Stat. 3207-39.

In 1988, Congress amended 924(c) yet again, this time substituting a penalty of "life imprisonment without release" for "20 years" in subsection (c)(1) "in order to effectuate the probable intent of Congress." *See* Act of Nov. 11, 1988, P.L. 100-649, § 2(b), 102 Stat. 3817; Nov. 18, 1988, P.L. 100-690, Title VI, Subtitle G, § 6211, Subtitle N, §§ 6451, 6460, 6462, Title VII,

Subtitle B, §§ 7056, 7060(a), 102 Stat. 4361, 4371, 4373, 4374, 4402, 4403; *see also* 18 U.S.C. §924, History.  Section 924(c) was amended in 1990 to include a ten-year mandatory sentence for the use of either a "short-barreled rifle [or a] short-barreled shotgun."  *See* Act of Nov. 29, 1990, P.L. 101-647, Title XI § 1101, Title XVII, § 1702(b)(3), Title XXII, §§ 2203(d), 2204(c), Title XXXV, §§ 3526-3529, 104 Stat. 4829, 4845, 4857, 4924.

Twenty-six years after the enactment of 18 U.S.C. §924, and after six separate amendments to 924(c) specifically, Congress amended section 924 in 1994 to include 924(i), which was eventually classified as 924(j) in a 1996 amendment.  *See* Act of Sept. 13, 1994, P.L. 103-322, Title VI, § 60013, Title XI, Subtitle A, §§ 110102(c), 110103(c), Subtitle B, § 110201(b), Subtitle D, § 110401(e), Subtitle E, §§ 110503, 110504(a), 110507, 110510, 110515(a), 110517, 110518, Title XXXIII, §§ 330002(h), 330003(f)(2), 330011(i), (j), 330016(1)(H), (K), (L), 108 Stat. 1973, 1998, 1999, 2011, 2015, 2016, 2018-2020, 2140, 2141, 2145, 2147.

After adding 924(j) in 1994, Congress amended 924(c) once more in 1998, the version which is still in place at present.  *See*

Act of Nov. 13, 1998, P.L. 105-386, § 1(a), 112 Stat. 3469.

Significantly, it was not until 2005 that Congress added paragraph 5 to 924(c), a subsection which specifically sets forth the penalty of a term a years, life, or death for the use or possession of armor piercing ammunition in the commission of a felony which causes the death of a person. *See* Act of Oct. 26, 2005, P.L. 109-92, §§ 5(c)(2), 6(b), 119 Stat. 2100, 2102. From this detailed history of the amendments to 18 U.S.C. §924, three clear points emerge. First, Congress has had no problems amending 924(c) and has done so on no less than nine occasions. Second, Congress did not amend 924(c) to include the language of 924(j); instead, Congress opted to include 924(j) as a separate subsection not subject to the mandatory consecutive sentencing scheme of 924(c)(1)(D)(ii). Third, in 2005, Congress amended 924(c) to include nearly identical language to 924(j) in 924(c)(5), illustrating that it chose to make the penalty for using or possessing armor piercing ammunition subject to the mandatory consecutive sentencing scheme outlined in 924(c)(1)(D)(ii). Had Congress intended for 924(j) to be subject to the mandatory consecutive sentencing scheme, it would have simply added it to the language of 924(j) or amended 924(c) to

include the language of 924(j). Congress had the opportunity to do so numerous times after enacting 924(j), and specifically inserted nearly identical language in 2005 to 924(c)(5), while leaving 924(j) untouched.

The Fourth Circuit and the Supreme Court have unequivocally established that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *William v. Gonzales*, 499 F.3d 329, 333 (4th Cir. 2007); *Clay v. United States*, 537 U.S. 522, 528 (2003). In the present case, not only has Congress omitted the mandatory language of 924(c)(1)(D)(ii) from 924(j), it has done so on numerous occasions and has left 924(j) untouched even after amending 924(c)(5) with nearly identical language in 2005. This rises well above a presumption that Congress acted intentionally; it virtually proves it.

Finally, it is well-established that it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause,

sentence, or word shall be superfluous, void, or insignificant."
*TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *William v. Gonzales*,
499 F.3d 329, 333 (4th Cir. 2007). Reading 924(j) to require
sentences to run consecutively would render 924(c)(5) superfluous.
Aside from 924(c)(5)'s focus on armor piercing ammunition, the only
difference between 924(j) and 924(c)(5) is that 924(c)(5) is
subject to the mandatory consecutive sentencing scheme of
924(c)(1)(D)(ii). Any reading of 924(j) that makes it subject to
924(c)(1)(D)(ii) would render either 924(j) or 924(c)(5)
superfluous. Under well-established rules of statutory
interpretation, such a reading is prohibited. *See also United
States v. Julian*, 233 F.3d 150, 1255 (11th Cir. 2011).

> **(b) Recent Case Law also Establishes that 18 U.S.C.**
> **924(j) is a Separate Offense from 924(c) and not Subject**
> **to a Mandatory Consecutive Sentencing Scheme**

While the two most recent cases on the issue of the
interaction between 924(c) and 924(j) come to different conclusions
regarding the nature of the sentencing scheme required under each,
both agree that 924(j) is a separate offense from 924(c). *See
United States v. Julian*, 233 F.3d 1250 (11th Cir. 2011); *United*

*States v. Berrios*, 676 F.3d 118, 140 (3d Cir. 2012).

In *United States v. Julian*, the Eleventh Circuit held that not only is 924(j) a separate offense from 924(c), it also held that 924(j) creates "a separate punishment for a crime that results in death [from 924(c)], and we allow district courts to run concurrently sentences for crimes of violence and drug trafficking crimes imposed under section 924(c)." *Julian*, 233 F.3d at 1255.

In *Julian*, the defendant was convicted of eight charges at trial, including two counts under 924(c) and 924(j). At sentencing, Julian objected to the PSR, which stated that the court was required to impose consecutive sentences based on 924(c)(1)(D)(ii)'s mandatory language for both the 924(c) and 924(j) counts. The District Court, however, agreed with the PSR, and imposed two life sentences on the murder charges and a total of 115 years for the other charges, all to be served consecutively. *Id.* at 1252. On appeal, the Eleventh Circuit vacated Julian's two life sentences and remanded the case back to the District Court for further proceedings.

The Eleventh Circuit approached the interaction of 924(c) and 924(j) first from a threshold question of whether 924(j) is a

14

separate offense with a separate punishment from 924(c), or whether 924(j) is just a sentencing factor to be examined under 924(c). If 924(j) is a separate offense, the question arises as to whether the mandatory consecutive sentencing scheme under 924(c)(1)(D)(ii) applies.

The Court began its analysis by looking to the plain language of the statute, finding that "Section 924(c) prohibits concurrent sentences, but this prohibition applies only to 'a term of imprisonment imposed on a person under this subsection.'" *Id.* at 1253. Pointing next to decisions in the Eighth and Sixth Circuit Courts of Appeals, the Court noted that these circuits have declined to read a sister provision, 924(o), which punishes conspiracy to commit an offense under 924(c), as mandating consecutive sentences under 924(c)(1)(D)(ii). *See United States v. Clay*, 579 F.3d 919, 933 (8th Cir. 2009); *United States v. Fowler*, 535 F.3d 408, 422 (6th Cir. 2008). This is because 924(o), like 924(j) carries its own form of punishment. *Cf.* 18 U.S.C. §924(o) & 18 U.S.C. §924(j).

Next, the Eleventh Circuit analyzed two Supreme Court cases, *Harris v. United States* and *Castillo v. United States*. In

*Harris*, the Court opined that sentencing factors are often enumerated in subsections under a paragraph that defines the offense; indeed, punishment for a 924(j) violation (e.g., term of years, life, death) is found directly after the main provision of 924(j) which defines the crime as a violation of 924(c) that results in the death of a person. *See Harris v. United States*, 536 U.S 545 (2002); *Julian*, 233 F.3d at 1253. In *Castillo*, the Supreme Court emphasized that sentencing factors often involve either characteristics of the offender or "special features" of the manner in which the crime was carried out. Homicide is not a "special feature" of a 924(c) violation; rather, a homicide resulting from a 924(c) violation gives rise to a violation of 924(j), a separate offense. *See Castillo v. United States*, 530 U.S. 120 (2000); *Julian*, 233 F.3d at 1253-54.

The Court in *Julian* noted that constitutional considerations under the Fifth and Sixth Amendments also support reading 924(j) as a separate offense. The Sixth Amendment prohibits the imposition of a sentence greater than "the maximum a criminal would receive if punished according to the facts reflected in the jury verdict alone." *Apprendi v. New Jersey*, 530 U.S. 466,

483 (2000). Under 924(c), life imprisonment is the maximum sentence a defendant may receive. Under 924(j), the maximum sentence is death. Therefore, 924(j) must be a separate offense from 924(c), otherwise it would violate the Sixth Amendment.

Similarly, the Fifth Amendment requires that allegations of each element of an offense be included in the indictment. In the present case, the Second Superseding Indictment includes each element of a 924(j) violation to avoid a Fifth Amendment issue, illustrating that 924(j) is a separate offense from 924(c): "Rodney Hairston did knowingly possess a firearm in furtherance of a drug trafficking crime … in violation of Title 18, United States Code, Section924(c)(1), and in the course of this violation caused the death of a person through the use of a firearm, whose killing was a murder in the first degree as defined in Title 18, United States Code, Section 1111…." ECF Doc. No. 128.

Finally, the Eleventh Circuit compared and analyzed the text of 924(c)(5) and 924(j) in light of the well-established rules about statutory construction and presumptions about Congressional omissions. The Court also addressed the argument that reading 924(j) as a separate offense that does not mandate consecutive

sentencing under 924(c)(1)(D)(ii) would create "the anomaly that a criminal would have to receive a consecutive sentence for any violation of section 924(c) except for those violations that cause death." *Julian*, 633 F.3d at 1255. As noted above, district courts are mandated to run a 924(c) conviction consecutively and may run a 924(j) sentence concurrently, if it so chooses. "[S]ection 924(j) creates a separate punishment for a crime that results in death, and we allow district courts to run concurrently sentences for crimes of violence and drug trafficking crimes imposed under section 924(c)." *Id.*

In the closing of its opinion, the Eleventh Circuit distinguished decisions from the Eighth and Tenth Circuits based on the grounds that: (1) neither Court drew a distinction between elements of an offense and sentencing factors as outlined by the Supreme Court in *Harris* and *Castillo*; (2) neither Court examined 924(c)(5) and the well-established rules of statutory construction and Congressional silence; and (3) neither Court addressed the impact of the Fifth and Sixth Amendments on reading a mandatory consecutive sentencing scheme into 924(j).

**(c) *The Fourth Circuit Has Not Squarely Addressed this Issue***

It bears noting that the Fourth Circuit has previously held that a violation of 924(j) requires the imposition of a consecutive sentence. *United States v. Hatten*, 2007 U.S. App. LEXIS 15977 (4th Cir. 2007) (unpublished). As indicated, the Fourth Circuit's *per curiam* decision in *Hatten* is unpublished. It was also decided before the Eleventh Circuit's opinion in *Julian*, and relies heavily on *United States v. Battle*, the Tenth Circuit case which held that 924(j) was simply a sentencing factor relevant to 924(c). Like the Courts in *Battle*, *Dinwiddie*, and *Staggs*, the Fourth Circuit did not have the benefit of the Eleventh Circuit's determination that 924(j) is a separate offense from 924(c) in *Hatten*, and did not analyze Supreme Court precedent in *Harris* and *Castillo*. Likewise, the Fourth Circuit has yet to analyze and opine on the legislative history, which as argued above, points to a reading of 924(j) that is consistent with the Eleventh Circuit's holding in *Julian*.

Based on each of the foregoing reasons, both collectively and individually, the better reading of 924(j) is that it is a separate offense from 924(c), and one which is not subject to the mandatory consecutive sentencing scheme described in

924(c)(1)(D)(ii). Instead, the plain language of 924(j) and clear Congressional intent demands that the District Court be free to wield its discretion to decide whether or not to impose a concurrent or consecutive sentence under 18 U.S.C. §924(j).

### 3. Because the Maximum Penalty for Count One is Five Years, It Should Not Trigger a Multiple Count Enhancement

Mr. Hairston pled guilty to a drug conspiracy under Count One of the Superseding Indictment which was restricted in time to January 26, 2010 and cites 21 U.S.C. §§841(a)(1) & (b)(1)(D) as the charged offense. Section 841(b)(1)(D) deals strictly with marihuana offenses with a five year statutory cap for incarceration and does **not** contain the penalty enhancement associated with "death or bodily injury" as mandated for convictions under Sections (b)(1)(A),(B) & (C). The only marihuana associated with the conspiracy as charged is approximately 12 pounds, which equates to a United States Sentencing Guideline base offense level of 12 under USSG §2D1. 1 (c)(14) – which would be reduced to an appropriate total offense level of 10 after the reduction for Acceptance of Responsibility. The PSR inaccurately assigns Mr. Hairston a base offense level of 43 on his drug conviction based on the enhancement

language of the crime resulting in "death or bodily injury." First,

the penalty enhancement factor of "death or bodily injury" is

simply not contained in the offense of conviction. *Federal Rule of*

*Criminal Procedure* 7 requires the Indictment to list the applicable

criminal citation and it cannot be amended if the Defendant was

misled or prejudiced. In this case Mr. Hairston was advised of the

5 year sentencing cap at his Arraignment, in his Plea Agreement and

at his Guilty Plea Hearing. The Court, the Prosecutor nor any

filings ever advised Mr. Hairston that the "death or bodily injury"

sentencing enhancement was applicable under Count One. To apply the

*USSG* guideline associated with the enhancement at this point would

violate *Rule* 7 and Mr. Hairston's constitutional right to notice.

Finally, the USSG itself only applies the 43 level

enhancement to convictions under 21 U.S.C. §841(b)(1)(A), (b)(1)(B)

& (b)(1)(C). See USSG §2D1.1(a)(1). In fact, none of the offense

level enhancements under USSG §2D1. 1(a) are applicable to Mr.

Hairston's Count One conviction under 21 US. C. §841 (B) (1) (D).

It follows that since the total offense level under Count One (10)

is more than 9 levels less serious than the total offense level

under Count Two (40, *infra),* Mr. Hairston's conviction under Count

One does not have any effect on the Court's *USSG* calculations. *See* USSG §3D1. 4(c).

### III.   The Sentencing Statutes

The primary directive and overriding principle expressed in 18 U.S.C. Section 3553(a) is that the court "impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph 2." Those purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(c) to protect the public from further crimes of the defendant; and,

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. Section 3553(a)(2).

In determining the minimally sufficient sentence necessary, Section 3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (Section 3553(a)(1));

2) "the kinds of sentences available" (Section 3553(a)(3));

3) the kinds of sentences available, the sentencing range under the Guidelines, and the policy statements issued by the Sentencing Commission (Section 3553(a)(4)and (5);

4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (Section 3553(a)(6)); and,

5) the need to provide restitution to any victims of the offense (Section 3553(a)(7)).

## IV.  A Sufficient But Not Greater Than Necessary Sentence

In fashioning a sentence for Rodney Hairston that is sufficient but not greater than necessary to achieve the goals of sentencing, we hope the Court will consider the following factors and circumstances.

(1)   Mr. Hairston is the only person involved in the conspiracy that does not belong to the violent street gang, 9-Tre Bloods. It was gang member Nicole Hairston, a/k/a "Su-Woop," who arranged for the contact between Mr. Hairston and gang member Keith Hairston, a/k/a "Fatal." It is unknown to Mr. Hairston why "Su-Woop" was not indicted in this case.

(2)   After "Fatal" and his fellow gang members set up for the robbery, Mr. Hairston attempted to prevent commission of

the crime by sending a text to "Fatal." Unfortunately, "Fatal" received the text after the homicide. *See PSR, at Paragraph 16.*

(3) After "Su-Woop" established the contact between "Fatal" and Mr. Hairston and before "Fatal" and the other gang members met Mr. Hairston on January 26, 2010, "Fatal" and his gang members had agreed to cut Mr. Hairston out of the proceeds from the robbery because Mr. Hairston was not a member of the 9-Tre Bloods. *See Government Discovery, Page 966.*

(4) Rodney was 19 at the time of the offense, and he had no criminal convictions.

(5) Approximately 21 months passed from Mr. Hairston's initial confession until he was arrested by the authorities.

(6) The United States plans to file a Motion for Substantial Assistance on behalf of Rodney. This motion confirms that he has provided substantial assistance in the investigation and prosecution of other persons who have committed offenses. As a result, the Court is specifically encouraged by the United States Sentencing Guidelines as well as 18 U.S.C. Section 3553(e) to depart below the Guidelines range and the statutory mandatory minimum sentences.

There obviously is no question that this is an exceedingly grave offense that warrants a substantial sentence that reflects its seriousness and promotes respect for the law. However, such a sentence can be imposed that will also give Rodney Hairston a chance to return to his community, spend time with his current loved ones, raise a family of his own and be a contributing member of society.

Respectfully submitted,
RODNEY LAMAR HAIRSTON

By: s/Anthony F. Anderson
Counsel

Anthony F. Anderson, Esquire, VSB #21345
Anderson & Friedman
1102 Second Street, S. W.
P. O. Box 1525
Roanoke, Virginia    24007
(540) 982-1525
afalaw@aol.com
  Counsel for Rodney Lamar Hairston


And

By: s/Thomas J. Bondurant, Jr.

Thomas J. Bondurant, Jr., Esquire, VSB #18894
Gentry Locke Rakes & Moore, LLP
10 Franklin Road, SE
P.O. Box 440013
Roanoke, Virginia 24022
Bondurant@gentrylocke.com
    Counsel for Rodney Lamar Hairston


## CERTIFICATE OF SERVICE

        I hereby certify that this 22nd day of February, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Donald Ray Wolthuis, Esquire
Ashley Brooke Neese, Esquire
Assistant United States Attorneys
P.O. Box 1079
Roanoke, Virginia 24008-1709
(540)857-2250
(540)857-2614 (fax)
donald.wolthuis@usdoj.gov
ashley.neese@usdoj.gov

Beverly M. Davis, Esquire
Davis Davis & Davis Attorneys
P.O. Box 3448
Radford, Virginia 24143
bvdvs@verizon.net
    Attorney for Andrew Armour

Patrick J. Kenney, Esquire
Law Office of Patrick J. Kenney
P.O. Box 599
Roanoke, Virginia 24004
pjk@patrickjkenneylaw.com
    Attorney for Andrew Armour

James C. Turk, Jr., Esquire
Harrison & Turk, PC
1007 East Main Street
Radford, Virginia 24141
jimturk@aol.com
    Attorney for Quentin Dwayne McNebb

Stuart J. Pearson, Esquire
Clement & Wheatley PC
P.O. Box 8200
Danville, Virginia 24543-8200
pearsons@clementwheatley.com
    Attorney for Quentin Dwayne McNebb

Thomas M. Blaylock, Esquire
P.O. Box 134
Roanoke, Virginia 24002
tmbcrimlaw@aol.com
    Attorney for Tremain Thomas

Perry H. Harrold, Esquire
P.O. Box 1282
Martinsville, Virginia 24114-1282
Pharrold2002@yahoo.com
    Attorney for Tremain Thomas

B. Patrick Sharpe, Esquire
Gardner, Gardner, Barrow & Sharpe
4th Floor
231 East Church Street
Martinsville, Virginia 24112
pat@ggbslawfirm.com
    Attorney for Keith Hairston

Christopher K. Kowalczuk, Esquire
Attorney at Law
P.O. Box 11971

Roanoke, Virginia 24022-1917
fedecf@ckklaw.net
    Attorney for Keith Hairston